# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

### PORTLAND DIVISION

BEVERLY McCAIN,

     Plaintiff,

     v.

COMMISSIONER OF THE SOCIAL
SECURITY ADMINISTRATION,

     Defendant.

Case No. 3:13-cv-01493-ST

OPINION AND ORDER

**STEWART, Magistrate Judge.**

Plaintiff, Beverly McCain ("McCain"), seeks judicial review of the final decision by the
Social Security Commissioner ("Commissioner") denying her application for Supplemental
Security Income ("SSI") under Title XVI of the Social Security Act ("SSA"), 42 USC
§§ 1381-1383f.   This court has jurisdiction to review the Commissioner's decision pursuant to
42 USC § 405(g) and § 1383(c)(3).   All parties have consented to allow a Magistrate Judge to
enter final orders and judgment in this case in accordance with FRCP 73 and 28 USC § 636(c).
For the reasons set forth below, that decision is reversed and remanded for the calculation and
payment of benefits.

1 - OPINION AND ORDER

## ADMINISTRATIVE HISTORY

McCain protectively filed for SSI on March 29, 2010, alleging a disability onset date of March 1, 1996.   Tr. 150-59, 167.[1]   Her application was denied initially and on reconsideration. Tr. 82, 94, 99-102, 113-15.   On April 26, 2012, a hearing was held before Administrative Law Judge ("ALJ") Paul G. Robeck.   Tr. 28-72.   The ALJ issued a decision on June 12, 2012, finding McCain not disabled.   Tr. 14-23.   Therefore, the ALJ's decision is the Commissioner's final decision subject to review by this court.   20 CFR §§ 416.1481, 422.210.

## FACTS

### I.  Background

Born in 1977, McCain was 34 years old at the time of the hearing.   Tr. 33.   She has an eighth grade education and previously worked as a cashier and a janitor.   Tr. 50, 173.   McCain alleges she has been disabled since 1996 due to the combined impairments of borderline intellectual functioning and bipolar disorder.   Tr. 150, 172.

### II.  Medical Records

According to a March 1985 Psychological Report by school psychologist Gary Kinstlinger, McCain, then age eight, was referred to him due to difficulties with behavior, academic achievement, and communication skills.   Tr. 280.   Mr. Kinstlinger stated that, according to the Behavior Evaluation Scale, McCain had "significant difficulties in the areas of interpersonal behavior, [and] inappropriate behavior," and must be considered to have a "very significant degree of adaptive behavior difficulty."   Tr. 281.

School records dated May 1991 indicate that McCain was placed in special education

---

[1]  Citations are to the page(s) indicated in the official transcript of the record filed on April 11, 2014 (docket #13).

2 - OPINION AND ORDER

classes in first grade.   Tr. 276-77.   She was noted to have "poor frustration tolerance" and

impulsivity.   Tr. 276.   At that time, the Wechsler Intelligence Scale for Children-Revised

showed McCain functioning in the minimally mentally disabled range of intelligence, with a

Verbal IQ of 74, Performance IQ of 84, and Full Scale IQ of 77.   Tr. 277.   This record also

indicates that in 1985 McCain had a Verbal IQ of 84, Performance IQ of 75, and Full Scale IQ of

78.   *Id*.   In 1988, she had a Verbal IQ of 69, Performance IQ of 75, and Full Scale IQ of 71.   *Id*.

A case closure summary from Western Psychological and Counseling Services dated

September 25, 2008, indicates that McCain was seen for counseling a dozen times between

February and September 2008.   Tr. 321.   The ultimate diagnosis was bipolar disorder and

generalized anxiety disorder, unchanged by the course of treatment.   Tr. 302, 321.

On January 28, 2009, McCain returned to Western Psychological for counseling with

Dale Reis, L.S.W.   Tr. 322.   On February, 11, 2009, she reported less anxiety since decreasing

her caffeine and sugar intake, but she did not like to be home alone.   Tr. 323.

On February 17, 2009, Raymond Pienczykowski, P.M.H.N.P., completed a Psychiatric

Intake form in which he diagnosed bipolar disorder and generalized anxiety disorder.

Tr. 299-302.

On March 12, 2009, McCain reported to Mr. Reis feeling "overwhelmed by stress."

Tr. 324.   On March 26, 2009, Mr. Reis recorded a significant improvement in her symptoms

with decreased mood swings and anxiety.   Tr. 325.

On April 9, 2009, Molly C. McKenna, Ph.D., conducted a Learning Disorder Evaluation.

Tr. 284-90.   Dr. McKenna listed her sources of information as a Learning Needs Screening, the

Wechsler Adult Intelligence Scale-III ("WAIS-III"), the Wechsler Individual Achievement Test-II

("WIAT-II"), and a Clinical Interview.   Tr. 284.   McCain was taking Celexa and reported that

she had been diagnosed with bipolar disorder at age 11.   Tr. 285.   She was psychiatrically

hospitalized at age 12 and then sent to group and foster homes.   *Id*.   She reported symptoms of

ADHD and anxiety, including panic when driving.   *Id.*   She was in special education classes

throughout school before dropping out in ninth grade.   *Id.*   Noting that McCain's test scores

were "considered a valid representation of her intellectual ability and academic achievement,"

Dr. McKenna found that McCain's Verbal IQ score was 66 and her Full Scale IQ was 69, and

diagnosed her with borderline intellectual functioning.   Tr. 286, 288.

On April 10, 2009, Mr. Reis noted increased anxiety and panic attacks.   Tr. 326.   On

April 23, 2009, McCain reported angry outbursts.   Tr. 327.   On June 11, 2009, McCain was

"irritable" with increased anxiety.   Tr. 329.   On May 9, 2009, McCain was calmer with Vistaril

and increased Celexa.   Tr. 330.   On August 20, 2009, McCain reported she had quit taking

Celexa due to weight gain, and Mr. Reis described her as mildly irritable and depressed.

Tr. 331.   On September 18, 2009, McCain described anxiety when she left her house alone.

Tr. 333.

On September 9, 2010, Edward J. Lairson, M.D., evaluated McCain for back pain causing

incontinence since June.   Tr. 350-56.   McCain was taking Omeprazole, Hydroxyzine Pamoate,

Estradiol, and Effexor.   Tr. 350.   Dr. Lairson noted an MRI revealed degeneration at L4-L5

with a left foraminal focal protrusion and an annular tear, and prescribed an epidural injection

and physical therapy.   Tr. 350, 352.

McCain was seen in the emergency room on October 17, 2010, for pain on the left side of

her body with numbness and tingling.   Tr. 430.

4 - OPINION AND ORDER

III.    **Hearing Testimony**

McCain testified she received SSI from age 18 until she married and her husband's income disqualified her for benefits in about 2004 or 2005.[2]    Tr. 33.    She tried working at J.C. Penny, but was let go.    Tr. 34.    The work was "overwhelming.    My anxiety really got to me, like I was — my heart starts beating really fast."    *Id.*    McCain lives with her three children and her mother who helps her care for the children and with their homework.    Tr. 36-38.    All of the children are on Individualized Education Programs.    Tr. 38.    McCain's mother also helps her around the house and with grocery shopping.    Tr. 38-39.

In about 2003 McCain attempted to complete a GED online but "it was too hard and [she] couldn't do it."    Tr. 50.    Her ex-husband helped her with the tests.    Tr. 51.    McCain could not read the long words.    *Id.*

McCain testified she has anxiety and panics when she is around people.    Tr. 52.    Her heart beats faster, she sweats, and she feels like she will lose consciousness.    *Id.*    She gets these symptoms at home as well, but not as intensely.    Tr. 53.    She also has daily mood swings.    *Id.*

McCain leaves the house to go to school meetings and grocery shopping.    Tr. 54.    She does not like being around crowds and never leaves the house without her mother.    Tr. 55.    Her daughter does some of the grocery shopping.    Tr. 56.    Her mother helps her cook meals once or twice a week, usually something from a box or a can.    Tr. 57.    McCain does the laundry and vacuums with reminders by her mother.    Tr. 58.    Her mother helps her read and write emails to her ex-husband and school teachers.    Tr. 59.

McCain naps for a couple of hours every day.    Tr. 59-60.    She does not have any friends.

---

[2]  Those benefits were discontinued beginning May 2004.    Tr. 226.

5 - OPINION AND ORDER

Tr. 60.   She can stand for about 15 minutes and sit for about 45 minutes before her back starts

to hurt.   Tr. 60-61.   Sometimes her back pain makes it difficult to get out of a chair.   Tr. 60.

## STANDARDS

The initial burden of proof rests on the claimant to establish disability.   *Molina v. Astrue*,

674 F3d 1104, 1110 (9th Cir 2012).   To meet this burden, a claimant must demonstrate her

inability "to engage in any substantial gainful activity by reason of any medically determinable

physical or mental impairment which . . . has lasted or can be expected to last for a continuous

period of not less than 12 months."   42 USC § 423(d)(1)(A).   The ALJ must develop the record

when there is ambiguous evidence or when the record is inadequate to allow for proper

evaluation of the evidence.   *McLeod v. Astrue*, 640 F3d 881, 885 (9th Cir 2011), quoting *Mayes

v. Massanari*, 276 F3d 453, 459–60 (9th Cir 2001).

The district court must affirm the Commissioner's decision if it is based on proper legal

standards and the findings are supported by substantial evidence in the record as a whole.   42

USC § 405(g); s*ee also Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F3d 1157, 1161 (9th Cir

2012).   Substantial evidence is "relevant evidence that a reasonable mind might accept as

adequate to support a conclusion."   *Molina*, 674 F3d at 1110-11, quoting *Valentine v. Comm'r

Soc. Sec. Admin.*, 574 F3d 685, 690 (9th Cir 2009).   It is more than a mere scintilla [of evidence]

but less than a preponderance.   *Id*, citing *Valentine*, 574 F3d at 690.

The ALJ is responsible for determining credibility, resolving conflicts in the medical

evidence, and resolving ambiguities.   *Vasquez v. Astrue*, 572 F3d 586, 591 (9th Cir 2009).   The

court must weigh all of the evidence whether it supports or detracts from the Commissioner's

decision.   *Ryan v. Comm'r of Soc. Sec.*, 528 F3d 1194, 1198 (9th Cir 2008).   Even when the

evidence is susceptible to more than one rational interpretation, the court must uphold the

Commissioner's findings if they are supported by inferences reasonably drawn from the record.

*Ludwig v. Astrue*, 681 F3d 1047, 1051 (9th Cir 2012).   The court may not substitute its judgment

for that of the Commissioner.   *Widmark v. Barnhart*, 454 F3d 1063, 1070 (9th Cir 2006).

## ALJ'S FINDINGS

The Commissioner engages in a five stop analysis to determine if a claimant is disabled.

20 CFR § 416.920; *Keyser v. Comm'r of Soc. Sec.*, 648 F3d 721, 724 (9th Cir 2011).

At step one, the ALJ found that McCain has not engaged in substantial gainful activity

since her March 29, 2010 protective filing date.   Tr. 16.

At step two, the ALJ found that McCain had the severe impairments of degenerative disc

disease of the lumbar spine, obesity, borderline intellectual functioning, bipolar disorder,

generalized anxiety disorder, and panic disorder without agoraphobia.   *Id.*

At step three, the ALJ concluded that McCain's impairments do not meet or equal the

criteria for any of the Listing of Impairments in 20 CFR part 404, subpart P, appendix 1.   Tr. 16.

 The ALJ then found that McCain had the residual functional capacity ("RFC") to perform light

work, except she was limited to performance of simple, repetitive tasks with only occasional

contact with the public and co-workers.   Tr. 18.

At step four the ALJ concluded McCain had no past relevant work.   Tr. 22.

At step five, the ALJ found that jobs exist in significant numbers in the national economy

that McCain can perform, including janitor and small products assembler.   Tr. 22-23.

///

///

7 - OPINION AND ORDER

## DISCUSSION

McCain contends the ALJ erred by failing to find her impairments met the requirements of Listing 12.05 and in rejecting lay testimony.   The Commissioner concedes that the ALJ erred as to his analysis of the Listings.

The ALJ must determine whether a claimant's impairment meets or equals an impairment listed in the Listing of Impairments.   The Listings describe specific impairments of each of the major body systems which are considered "severe enough to prevent an individual from doing any gainful activity."   20 CFR § 416.925(a).   Most of these impairments are "permanent or expected to result in death."   20 CFR § 416.925(c)(4).   "For all others, the evidence must show that [the] impairment(s) has lasted or can be expected to last for a continuous period of at least 12 months."   *Id.*   If a claimant's impairment meets or equals a listed impairment, he or she will be found disabled at step three without further inquiry.   *Lewis v. Apfel*, 236 F3d 503, 512 (9th Cir 2001), citing 20 CFR § 1520(d).

For each of the impairments considered severe, the Listings describe the "specific criteria for establishing a diagnosis, confirming the existence of an impairment, or establishing that your impairment(s) satisfies the criteria," including "the objective medical and other findings needed."  20 CFR § 416.925(c)(2)-(c)(3).   A claimant must establish that he or she meets all of the criteria of a listed impairment.   20 CFR § 416.925(d).   Even if an impairment does not meet all of the criteria of a listing, it can be "medically equivalent" to the criteria "if it is at least equal in severity and duration."   20 CFR § 416.926(a).

The ALJ found that McCain's mental impairments did not meet or equal Listing 12.02 (organic brain disorder), 12.04 (affective disorders), and 12.06 (anxiety related disorders).

8 - OPINION AND ORDER

Tr. 17.   However, the ALJ did not consider Listing 12.05 which provides in relevant part as

follows:

> 12.05 *Intellectual disability:* intellectual disability refers to significantly
> subaverage general intellectual functioning with deficits in adaptive functioning
> initially manifested during the developmental period; i.e., the evidence
> demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A,
> B, C, or D are satisfied.
>
>          * * *
>
> C.   A valid verbal, performance, or full scale IQ of 60 through 70 and a physical
> or other mental impairment imposing an additional and significant work-related
> limitation of function;

The Commissioner concedes that by failing to consider Listing 12.05, the ALJ erred.

However, rather than remanding for an award of benefits, the Commissioner argues that further

proceedings are required in order to determine whether McCain's records demonstrate "deficits

in adaptive functioning initially manifested during the developmental period . . . before age 22"

and whether the IQ scores should be considered "valid."

Courts have found that a deficit in adaptive functioning manifesting prior to the age of 22

may be inferred from circumstantial evidence.   Examples of such evidence include:   attendance

in special education classes; dropping out of high school prior to graduation; difficulties in

reading, writing or math; and low-skilled work history.   *See, e.g.*, *Christner v. Astrue*, 498 F3d

790, 793 (8th Cir 2007) (special education through ninth grade); *Markle v. Barnhart*, 324 F3d

182, 189 (3rd Cir 2003) (special education through ninth grade; dropping out after two months in

tenth grade); *Gomez v. Astrue*, 695 F Supp2d 1049, 1061 (CD Cal 2010) (slow educational

development; dropping out in ninth grade).   The record here reveals that McCain attended

special education classes, dropped out of high school before graduation, and had great difficulty

with core subject matter.   Her annual earnings never exceeded $2,270.00.   Tr. 166.   Thus, it is

clear that McCain's deficit in intellectual functioning manifested before she was 22 years old.

McCain contends that she meets the criteria of Listing 12.05(C), pointing to her 1988

Verbal IQ score of 69, April 2009 Verbal IQ score of 66, and April 2009 Full Scale IQ of 69

which fall within the required range "of 60 through 70."   Dr. McKenna specifically noted that

McCain's April 2009 scores were valid.   Tr. 286.   No evidence in the record suggests

otherwise.

Listing 12.05(C) also requires McCain to establish "a physical or other mental

impairment imposing an additional and significant work-related limitation of function."   In

addition to borderline intellectual functioning, the ALJ found that McCain had the severe

impairments of degenerative disc disease of the lumbar spine, obesity, bipolar disorder,

generalized anxiety disorder, and panic disorder without agoraphobia.   Tr. 16.   A finding of

severe impairment at step two is a finding of an "impairment impos[ing] an additional and

significant work-related limitation of function" as employed in the second prong of Listing

12.05(C).   *See Fanning v. Bowen*, 827 F2d 631, 633 (9th Cir 1987) (adopting the standard that an

impairment imposes a significant work-related limitation of function when its effect is more than

slight or minimal).

The decision whether to remand for further proceedings or for immediate payment of

benefits is within the discretion of the court.   *Harman v. Apfel*, 211 F3d 172, 1178 (9th Cir

2000), *cert. denied*, 531 US 1038 (2000).   The issue turns on the utility of further proceedings.

A remand for an award of benefits is appropriate when no useful purpose would be served by

10 - OPINION AND ORDER

further administrative proceedings or when the record has been fully developed and the evidence is insufficient to support the Commissioner's decision.   *Strauss v. Comm'r of the Soc. Sec. Admin.*, 635 F3d 1135, 1138-39 (9th Cir 2011), quoting *Benecke v. Barnhart,* 379 F3d 587, 593 (9th Cir 2004).   The court may not award benefits punitively and must conduct a "credit-as-true" analysis to determine if a claimant is disabled under the Act.   *Id* at 1138.

Under the "credit-as-true" doctrine in the Ninth Circuit (which the Commissioner opposes), evidence should be credited and an immediate award of benefits directed where: (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.   *Id.*   The "credit-as-true" doctrine is not a mandatory rule in the Ninth Circuit, but leaves the court flexibility in determining whether to enter an award of benefits upon reversing the Commissioner's decision.   *Connett v. Barnhart*, 340 F3d 871, 876, citing *Bunnell v. Sullivan*, 947 F2d 871 (9th Cir 2003) (*en banc*).   The reviewing court should decline to credit testimony when "outstanding issues" remain.   *Luna v. Astrue,* 623 F3d 1032, 1035 (9th Cir 2010).

It is undisputed that the ALJ erred by failing to consider whether McCain met the requirements of Listing 12.05, and, for the reasons set out above, the evidence shows that McCain meets all of the criteria of Listing 12.05(C).   Accordingly, this matter is remanded for the calculation and award of benefits.

///

///

**ORDER**

For these reasons, the Court REVERSES and REMANDS the decision of the

Commissioner pursuant to Sentence Four of 42 USC§ 405(g) for the immediate calculation and

payment of benefits.

Dated this 27th day of February, 2014.

<div style="margin-left: 45%;">

__s/ Janice M. Stewart_____
Janice M. Stewart
United States Magistrate Judge

</div>

12 - OPINION AND ORDER